**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICK WAYNE MANNING, II,

     Petitioner - Appellant,

v.

ROBERT C. PATTON, Director,

    Respondent - Appellee.

No. 15-5072
(D.C. No. 4:13-CV-00722-TCK-FHM)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Patrick Manning seeks a certificate of appealability ("COA") to appeal the

district court's dismissal of his 28 U.S.C. § 2254 petition. We deny a COA and

dismiss the appeal.

**I**

In 2009, police obtained a warrant for Manning's arrest in connection with four

bank robberies. When confronted by police, he ran. Police then shot him repeatedly with

a pepper-ball gun, which Manning testified left welts on his back and hands. As he was

running, Manning testified that he fell to the ground, although police claim they tackled

him. He was then handcuffed and placed in the patrol car. The officers testified that

_____

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Manning then made voluntary and unsolicited statements suggesting that he performed the robberies, such as a statement that he "did some licks on some banks." However, at trial Manning argued that he never made those statements. A jury convicted on four counts of robbery with a firearm and one count of resisting an officer, and the court sentenced him to four consecutive terms of forty years' imprisonment.

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed the conviction. The state trial court later denied his motion for post-conviction relief, and the OCCA affirmed. Manning timely filed his § 2254 petition, which the district court denied. The district court also denied a COA. This request for a COA followed.

## II

We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" exists if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotation omitted). Because the petitioner is in custody pursuant to the judgment of a state court, the petition should be resolved in his favor only if the adjudication of the claim "resulted in a decision that was contrary to, or involved unreasonable application of, clearly established Federal law"; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**A**

Manning raises five grounds for relief. He first argues that his confession was coerced in violation of his Fifth and Fourteenth Amendment rights.

> [A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession and even though there is ample evidence aside from the confession to support the conviction.

Jackson v. Denno, 378 U.S. 368, 376 (1964). An involuntary confession also violates the Fifth Amendment's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 460 (1966).

Manning alleges that when the arresting officers placed him in their patrol car, he was "unharmed, except for pepper-ball spray." He claims the officers then beat him severely and put a gun to his head, forcing him to confess to the robberies. However, in his trial court testimony he acknowledged that—before the officers placed him in the patrol car—he fell while running, was kicked in the ribs, and was shot about eighty times with pepper balls, which left welts covering his back and hands. The officers likewise testified that they tackled him and that he had a "busted lip" when they placed him in the car. This testimony is at odds with the assertion that he was unharmed when arrested. And the officers testified that they did not touch him while he was in the car.

Although reasonable jurists could conclude that some of Manning's injuries were inflicted in the car, the question before us is whether the contrary finding was unreasonable. § 2254(d)(2). Reasonable jurists cannot debate that the trial record adequately supported the determination that his injuries were inflicted before he entered

the patrol car, and, consequently, that his confession was voluntary. As such, the petitioner has not made a substantial showing that his Fifth and Fourteenth Amendment rights were violated.

**B**

Manning claims ineffective assistance of counsel because appellate counsel did not argue on direct appeal that trial counsel had a conflict of interest in violation of the Sixth Amendment.[1] See Hale v. Gibson, 227 F.3d 1298, 1312 (10th Cir. 2000). To obtain a COA on this claim, a petitioner must demonstrate that reasonable jurists could debate whether: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense in a manner "so serious as to deprive [him] of a fair trial . . . whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). Because Manning alleges that his appellate counsel was deficient in omitting the issue of ineffective trial counsel on direct appeal, we must first consider the merits of the omitted issue. See Hawkins v. Hannigan, 185 F.3d 1146, 1152

---

[1] He also argues the district court erred in denying as untimely his motion to amend his petition to add a claim for ineffective assistance of trial counsel. We review the district court's decision to deny amendment for abuse of discretion. Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996). Manning argues that his timely claim for ineffective assistance of appellate counsel included a claim for ineffective assistance of trial counsel because the former was premised on appellate counsel's alleged failure to raise trial counsel's ineffectiveness. But Manning does not point to any case holding that an ineffective appellate counsel claim carries with it an ineffective trial counsel claim. The district court observed that Manning previously pled distinct claims of ineffective assistance of trial counsel and appellate counsel on direct appeal and in his post-conviction proceedings in state court. Moreover, the district court considered the merits of the trial counsel claim in its analysis of the appellate counsel claim. Thus, the district court did not abuse its discretion in denying Manning's motion for leave to amend.

-4-

(10th Cir. 1999) ("If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.").

To establish deficient performance due to a conflict of interest, "the interests of counsel and defendant must be divergent . . . , such that the attorney has an interest in the outcome of the particular case at issue that is adverse to that of the defendant." Hale, 227 F.3d at 1313. Further, a petitioner must show that "his counsel actively represented conflicting interests." United States v. Soto Hernandez, 849 F.2d 1325, 1329 (10th Cir. 1988). Manning contends that during a pre-trial hearing several witnesses entered the courtroom and viewed him seated at the defense table. He claims this incident allowed witnesses to identify him in what amounted to a one-man lineup in violation of United States v. Wade, 388 U.S. 218 (1967), which observed, inter alia, that a lineup in which multiple witnesses identify the defendant in each other's presence is "fraught with dangers of suggestion," id. at 234, and that a lineup in which the witnesses are told by the police that they have caught the culprit and the defendant is then brought before the witness or viewed in jail is "improper," id. at 233. Based on his allegations that counsel refused to alert the court of the improper lineup, failed to question the witnesses about the lineup, impeded Manning's attempts to alert the court about the lineup, and made false statements to protect herself for failing to report the lineup, Manning argues trial counsel was ineffective.

The record does not support Manning's contentions. Trial counsel alerted the court that witnesses had viewed the defendant before testifying. The prosecution conceded that one witness had viewed Manning, as did two people who the

-5-

prosecution did not intend to call as witnesses. The court then afforded Manning the opportunity to present his version of events, and found that his account did not accurately reflect what occurred. And the court concluded that even if other witnesses had seen him, the viewing was not prejudicial. Moreover, Manning acknowledges that his counsel asked the witnesses if they had seen the defendant before trial. The witness who saw Manning before trial testified that—in addition to seeing photos of him in the news—she had seen the defendant in court the day before. Trial counsel immediately impeached the credibility of that witness's identification, and attacked the credibility of in-court witness identifications again in her closing argument.

Manning nevertheless asserts that counsel lied to the court by stating that the witnesses improperly viewed her client from the window of the courthouse, rather than stating that they entered the gallery. We do not perceive the gravity of this distinction, nor does the distinction demonstrate counsel's interest in perpetuating her version of events. Simply, Manning has not shown that his interest and counsel's interest were divergent. Hale, 227 F.3d at 1313. And, even if the interests had diverged, that trial counsel alerted the court to the improper witness contact and that she impeached the in-court identifications demonstrate that she did not actively represent those divergent interests. Soto Hernandez, 849 F.2d at 1328-29. The claim of ineffective trial counsel does not have merit, and thus Manning has not made a substantial showing of ineffective assistance of appellate counsel. Hawkins, 185 F.3d at 1152.

**C**

Relatedly, because an eyewitness saw him in the courtroom before testifying against him, Manning argues a due process violation. Courts apply a "due process check" to the admission of eyewitness identifications "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." Perry v. New Hampshire, 132 S. Ct. 716, 720 (2012). Even then, however, eyewitness testimony is disallowed only if there is "a very substantial likelihood of irreparable misidentification." Id.

This claim rests on the assertions that immediately after the robbery the witness could not recall the robber's eye color; that in court a year later she testified that the robber had brown eyes; and that the only way she could have learned Manning's eye color in the interim was by viewing him in the courtroom before testifying. However, those assertions alone do not support a conclusion that suggestive circumstances led the witness to identify him as the robber, especially because the witness could have learned his eye color from the photographs she had seen in the news. Thus, Manning has not made a substantial showing that police or the prosecution arranged suggestive circumstances leading the witness to identify him.

**D**

Petitioner further contends that the trial court should have granted his motion to dismiss counsel and proceed pro se. The Sixth Amendment "grants to the accused personally the right to make his defense." Faretta v. California, 422 U.S. 806, 819 (1975). However, the right to self-representation is not absolute. United States v. Akers,

215 F.3d 1089, 1097 (10th Cir. 2000).  To invoke the right of self-representation, the

defendant must:  (1) clearly and unequivocally assert his intention to represent himself;

(2) knowingly and intelligently relinquish the benefits of representation by counsel; and

(3) make this assertion in a timely manner.  Id.  The assertion is generally timely if it is

made before trial.  Id.

Manning unequivocally asserted his intention to represent himself.  However, he

made the request in the middle of trial, and so it was not timely.  And even if a conflict of

interest had arisen suggesting the court should have allowed his mid-trial motion, see

Martel v. Clair, 132 S. Ct. 1276, 1286 (2012) (court must substitute counsel "if the first

lawyer developed a conflict with or abandoned the client"), he did not knowingly and

intelligently relinquish the benefits of representation by counsel.  After the prosecutor

suggested that "if he does go pro se [his attorney] be requested to remain in the case to

assist him in his defense," the Judge indicated that he would consider granting the motion

if Manning provided some assurance that he knew how to present evidence.  In response,

Manning requested that his attorney assist him "as a stand-by."  That he responded by

requesting that his attorney remain involved demonstrates that he did not knowingly and

intelligently relinquish the benefits of counsel.  Cf. Faretta, 422 U.S. at 819 (defendant

had right to self-representation because he asserted that right after the Judge warned him

he would have to follow rules of procedure).  Because Manning did not fulfill the

requirements to invoke the right of self-representation, he has not made a substantial

showing that the denial of his motion to proceed pro se violated the Sixth Amendment.

**E**

Finally, we consider Manning's Confrontation Clause claim. The Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses," U.S. Const. amend. VI, who "bear testimony" against him by making "a solemn declaration or affirmation . . . for the purpose of establishing or proving some fact." Crawford v. Washington, 541 U.S. 36, 51 (2004). Manning argues he was not afforded an opportunity to confront officers about the chain of custody of phone call recordings, although he testified that the recordings accurately captured statements he made. However, the court did not admit any declaration or affirmation made by the officers, and "deficiencies in the chain of custody go to the weight of the evidence, not its admissibility," United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir. 1989). Absent a declaration or affirmation against him, he has not made a substantial showing of a Sixth Amendment violation.

**III**

We **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge