**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 16-2044

DAVID SAVOY THOMAS,

      Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:13-CR-03897-MV-1)**

---

Stephen P. McCue, Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

C. Paige Messec, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **TYMKOVICH**, Chief Judge, **SEYMOUR**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Defendant-Appellant David Savoy Thomas appeals from his conviction of four counts of robbery, 18 U.S.C. § 1951(a), following a jury trial. On appeal, he challenges (1) the sufficiency of the evidence on Count 1, (2) an in-court

identification, and (3) the denial of his motion to sever the Count 1 robbery charge from the other robbery counts. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

In December 2013, Mr. Thomas was charged with four counts of Hobbs Act robbery, which requires proof of an unlawful taking of property against another's will "by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1). He was also charged with one count of using a firearm during a crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). According to the indictment, Count 1 occurred on May 1, 2010, at a McDonald's restaurant; Counts 2 and 3 occurred on August 10 and August 17, 2013, respectively, at the same Family Dollar store; and Count 4 occurred on October 19, 2013, at a Check 'n Go. Count 5 alleged that Mr. Thomas used a firearm during the Count 4 robbery. Each robbery occurred near the intersection of San Pedro and Lomas NE in Albuquerque, New Mexico, and involved someone entering a store and threatening or forcing an employee to provide money from a cash register.

Prior to trial, Mr. Thomas moved to sever Count 1 from the other counts, arguing that Count 1 was not properly joined with the remaining counts and, even if joinder was proper, that it would prejudice his defense. 1 R. 19–23. The district court denied the motion, finding joinder to be proper and that Mr. Thomas

had not met his burden to show that severance was warranted.  United States v. Thomas, 61 F. Supp. 3d 1221, 1226–27 (D.N.M. 2014).

The case then proceeded to trial on March 30, 2015.  The jury convicted Mr. Thomas on Counts 1–4 (the robbery offenses), but could not reach a verdict on Count 5 (the firearm offense).  The district court later sentenced Mr. Thomas to 108 months of imprisonment, followed by three years of supervised release.  The evidence underlying the convictions is discussed below, as pertinent.

## Discussion

### A.    Sufficiency of the Evidence on Count 1

Mr. Thomas challenges the sufficiency of the evidence demonstrating force on Count 1.  The government argues that plain error review applies because Mr. Thomas did not raise this specific challenge, but concedes that the review would be similar because insufficiency of the evidence generally meets the plain error test.  Aplee. Br. at 17 (citing United States v. Rufai, 732 F.3d 1175, 1189 (10th Cir. 2013)).  Mr. Thomas made a general motion for a judgment of acquittal, Fed. R. Crim. P. 29, at the close of the government's case and at the end of defense testimony with respect to Count 1, and we conclude our standard of review is de novo.  United States v. Johnson, 821 F.3d 1194, 1201 (10th Cir. 2016); see United States v. Kelly, 535 F.3d 1229, 1234–35 (10th Cir. 2008).

Violent force is required to sustain a conviction under the Hobbs Act.  In

Johnson v. United States, the Supreme Court defined violent force as "force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010). This requires more than the "slightest offensive touching" that may sustain a misdemeanor battery conviction, id. at 139, but may "consist . . . of only th[e] degree of force necessary to inflict pain — a slap in the face, for example," id. at 143.

We view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could find the element in question. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The McDonald's employee who was acting as a cashier during the robbery testified that the robber "bumped" him, got "aggress[ive]," and "hit" or "pushed [him] away" as he was working. 3 R. 212–13. At the time, the employee thought someone had gotten upset with him and pushed him. Id. at 213.

Mr. Thomas argues that a push is not enough under Johnson and that the witness never testified that he experienced any pain or injury. But the push here was not slight — it was an aggressive one. "Aggression" is derived from the Latin word "aggressio," which means "attack," and is defined as "a forceful action or procedure (as an unprovoked attack) esp. when intended to dominate or master." Merriam-Webster Collegiate Dictionary (11th ed. 2004). Reading the record in the light most favorable to the verdict, we conclude that aggressive pushing, as occurred here, is sufficient under Johnson. See, e.g., United States v.

-4-

Romo-Villalobos, 674 F.3d 1246, 1249–50 (11th Cir. 2012) (holding that the Florida crime of "resisting an officer with violence" requires more than *de minimus* force and therefore comports with Johnson). We do not read Mr. Thomas's cases to suggest otherwise. See, e.g., United States v. Gardner, 823 F.3d 793, 804 (4th Cir. 2016) ("North Carolina has defined common law robbery to encompass cases involving the use of minimal force, which does not satisfy the condition of 'violent force' . . . ."); United States v. Flores-Cordero, 723 F.3d 1085, 1088 (9th Cir. 2013) ("Under prevailing Arizona law, the use of minimal force is sufficient to constitute 'resisting arrest,'" and therefore does not meet the requirements of Johnson).

We also reject Mr. Thomas's argument that proof of pain or injury is required. Johnson only provides that the nature of the force must be "capable of causing physical pain or injury." 559 U.S. at 140 (emphasis added). Of course, one may experience pain or injury from the impact of an aggressive push, by falling down or coming into contact with a wall or other object. Thus, actual pain or injury is not required and the push in this case suffices.

## B.     In-Court Identification

Mr. Thomas also challenges witness Angela Montez's in-court identification on Count 2 that was admitted without judicial prescreening. He asserts this procedure violated his right to due process. Specifically, he argues that (1) the identification was unduly suggestive because he was the only African-

American man at the defense table, (2) Ms. Montez had never previously been asked to identify the Count 2 robber, and (3) her in-court identification took place more than 19 months after the robbery. Our review of the identification procedure for compliance with the Constitution is de novo; the factual basis underlying the district court's decision is reviewed for clear error. United States v. Thompson, 524 F.3d 1126, 1135 (10th Cir. 2008).

The parties disagree whether due process requires the district court to make a reliability assessment to determine the admissibility of an in-court identification. At the heart of this dispute is whether the Supreme Court's decision in Perry v. New Hampshire, 565 U.S. 228 (2012), extends to in-court identifications. In Perry, the defendant argued that the admission of an out-of-court identification violated his right to due process. The Supreme Court held that the identification was admissible because "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." Id. at 248.

Since Perry, other circuits have debated whether or not the Court's decision overruled circuit-level precedent requiring inquiries into the suggestiveness and reliability of in-court identifications. See, e.g., United States v. Correa-Osorio, 784 F.3d 11, 17–22 (1st Cir. 2015) (noting the debate and rejecting the defendant's in-court identification argument under both Perry and the circuit's

-6-

pre-Perry suggestiveness and reliability test); Lee v. Foster, 750 F.3d 687, 690–92 (7th Cir. 2014) (inquiring into the suggestiveness and reliability of an in-court identification even after Perry). We find most persuasive the approach taken by the Eleventh Circuit in United States v. Whatley, where the court held that the Supreme Court's decision in Perry applies not only to pretrial identifications but also to in-court identifications. 719 F.3d 1206, 1214–17 (11th Cir. 2013). The Court in Perry expressly rejected a "rule requiring trial judges to prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances." 565 U.S. at 240; see also Manning v. Patton, 639 F. App'x 544, 548 (10th Cir. 2016) (citing Perry for the proposition that courts apply the "due process check" when law enforcement arranged the suggestive circumstances surrounding the eyewitness identification); United States v. Hill, 604 F. App'x 759, 787 (10th Cir. 2015) (same).[1] Neither the question presented to the Court nor its holding is confined to pretrial identifications. See Perry, 565 U.S. at 236, 248. Rather, the Court referred generally to "eyewitness identification[s]," id., and expressly rejected prescreening for in-court identifications, id. at 244; Whatley, 719 F.3d at 1216.

Although we must adhere to prior precedent, there are exceptions, including en banc reconsideration or supervening Supreme Court authority. In re Smith, 10

---

[1] These orders and judgments are cited for their persuasive value on the proper scope of Perry, not as precedent.

F.3d 723, 724 (10th Cir. 1993) (per curiam).  Accordingly, to the extent our prior precedent indicates that a judicial reliability assessment is necessary in these circumstances, such a rule is no longer viable.

Thus, Mr. Thomas lacks the factual predicate for a judicial reliability assessment, and we must reject his argument on that score.  Mr. Thomas contends that the in-court identification was unduly suggestive because he was the only African-American man at counsel table, the eyewitness had never been asked to identify the robber before, and her in-court identification occurred more than 19 months after the robbery in Count 2.  These circumstances, however, were not the product of improper conduct by law enforcement — be it by police officers or the prosecution.  Of course, it is customary for defendants to sit at counsel table, and defendants do not have a constitutional right to a pretrial identification.  Whatley, 719 F.3d at 1216; see also United States v. Curtis, 344 F.3d 1057, 1063 (10th Cir. 2003).

Our holding is consistent with the view that evidentiary reliability is traditionally a question for the jury, not the judge, and that other due-process protections are in place that limit the weight the jury attributes to evidence that may be unreliable.  See Perry, 565 U.S. at 245.

We note that Mr. Thomas was able to confront the witness during cross-examination with the assistance of competent counsel.  Cf. id. at 245–46.  Indeed, Mr. Thomas's counsel established, among other things, that the witness was not

wearing her glasses on the day of the robbery, and challenged the witness's description of the robber. See 3 R. 282–84. Mr. Thomas also presented an expert witness who testified as to the fallibility of eyewitness identifications. Id. at 382–443. Additionally, the district court instructed the jury to consider the circumstances surrounding the identification, including the manner in which Mr. Thomas was presented as well as the length of time that had passed between the commission of the offense and the subsequent identification. 1 R. 441–42; cf. Perry, 565 U.S. at 246. Whether to credit the in-court identification was the province of the jury.

## C.   Denial of the Motion to Sever Count 1

Mr. Thomas also challenges the denial of his motion to sever Count 1. Joinder of offenses in a single trial is appropriate when the offenses "are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Even when such requirements are met, however, a trial court may elect to conduct separate trials if joinder appears to prejudice the defendant. Fed. R. Crim. P. 14(a).

We review the district court's severance denial for abuse of discretion, while recognizing the defendant's task in overturning such a decision is difficult. United States v. Olsen, 519 F.3d 1096, 1102 (10th Cir. 2008). Although the government argues that we should review some of Mr. Thomas's arguments for plain error because they were not presented to the district court, under any

standard of review, his arguments are unavailing.  To prevail on a motion to sever, a defendant must demonstrate that the joinder would cause actual prejudice to his defense that outweighs the expense and inconvenience of separate trials. United States v. Hutchinson, 573 F.3d 1011, 1025 (10th Cir. 2009).  It is not enough to show that separate trials may have afforded a better chance of acquittal. United States v. Hollis, 971 F.2d 1441, 1457 (10th Cir. 1992).  Rather, to demonstrate prejudice, a defendant must show the right to a fair trial is threatened or actually impaired.  Olsen, 519 F.3d at 1103.

Essentially, Mr. Thomas argues that the robbery in Count 1 occurred three years before the other robberies, was dissimilar, would not have been admissible in a trial regarding Counts 2–4, and was based upon palm-print evidence rather than eyewitness testimony.  We find no abuse of discretion in not severing.

The four robbery counts were "of the same or similar character," Fed. R. Crim. P. 8(a) — each robbery was committed near the same intersection in Albuquerque, and Mr. Thomas was alleged to have entered the store and immediately demanded money through the use of force or threat directed at an employee.  Any prejudice resulting from the mere cumulative effect of the evidence underlying the multiple charges does not mandate severance.  Hollis, 971 F.2d at 1457.

We also reject the supposition that the Count 1 evidence would have been inadmissible in a separate trial on Counts 2 through 4.  Evidence of uncharged

acts may be admissible as <u>res gestae</u>, or intrinsic evidence inextricably connected to the charged crimes. <u>United States v. Ford</u>, 613 F.3d 1263, 1267 (10th Cir. 2010). After all, it was Mr. Thomas's palm print on the door of the McDonald's robbery that led the investigating officer to suspect Mr. Thomas in the subsequent robberies and to then include his photograph in the array shown to some of the witnesses of the later robberies. <u>See</u> 3 R. 193–96; <u>cf.</u> <u>United States v. Thomas</u>, 223 F. App'x 447, 454–55 (6th Cir. 2007) (unpublished) (upholding the admission of testimony that explained why law enforcement focused on the defendant as <u>res gestae</u> evidence).

Additionally, Mr. Thomas cites no authority to support his contention that the different forms of evidence for different counts (e.g., palm-print evidence for Count 1 versus eyewitness testimony for the remaining counts) warrants severance. If anything, the different forms make it more likely that the jury was able to distinguish between counts, thereby weighing against a finding of prejudice. In any event, "limiting instructions are 'ordinarily sufficient to cure potential prejudice.'" <u>Hutchinson</u>, 573 F.3d at 1026 (quoting <u>United States v. Hardwell</u>, 80 F.3d 1471, 1487 (10th Cir. 1996)). Here, the jury was properly instructed that each count of the indictment and its underlying evidence must be considered independently. 1. R. 456.

AFFIRMED.

-11-