**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DANIEL THOMAS,

    Defendant - Appellant.

No. 17-1278
(D.C. No. 1:16-CR-00071-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

A jury convicted Defendant Daniel Thomas of assault with a dangerous

weapon, *see* 18 U.S.C. § 113(a)(3), possession of contraband in prison, *see id.*

§ 1791(a)(2), and assault resulting in serious bodily injury, *see id.* § 113(a)(6).  He

was sentenced to 150 months in prison. The charges arose from two separate assaults

perpetrated by Defendant while incarcerated in federal prison.  Defendant contends

on appeal that the district court should have instructed the jury on self-defense and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

severed the charges relating to the two assaults. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

On June 9, 2015, Defendant stabbed another inmate while incarcerated at the United States Penitentiary (USP) in Florence, Colorado. The incident was recorded on several videos from different angles. The videos show Defendant walking down a ramp behind another inmate to an outdoor prison yard. The other inmate looks over his shoulder at Defendant, who, moments later, makes a striking motion to the right side of the other inmate's face. He follows up with two more stabbing motions toward the victim's abdomen. The victim turns to face Defendant while retreating backwards down the ramp as Defendant trots after him. The two men face off in fighting stances at the bottom of the ramp—Defendant with shank in hand—until prison guards intervene. In a recorded statement to investigators, Defendant claimed to have acted preemptively, in self-defense, because otherwise he "would've got stabbed up by at least two guys." Supp. R., Gov't Ex. 15 at 3:48-51. The government obtained a two-count indictment charging Defendant with assault with a dangerous weapon and possession of contraband.

On September 9, 2016, Defendant assaulted another inmate while he was incarcerated at the Federal Correctional Institute (FCI) in Englewood, Colorado. Defendant threw the other inmate down a flight of stairs and then stomped and kicked the inmate. The other inmate suffered serious injuries. After this incident the government obtained a three-count superseding indictment charging Defendant with

2

the two crimes alleged in the original indictment (counts 1 and 2) as well as assault resulting in serious bodily injury based on the FCI assault (count 3).

Before trial, Defendant moved to sever counts 1 and 2 from count 3. He acknowledged that the alleged offenses were similar but argued there was a great risk of prejudice because evidence of one alleged assault might tend to show a propensity to commit the other. He further argued that he would be prejudiced by the cumulative evidence, which would enable the government to bolster the weaker charges (counts 1 and 2) with evidence underlying the stronger charge (count 3). He also asserted that severance was warranted to protect his right against self-incrimination because, although he had important testimony to give regarding counts 1 and 2—namely, that he acted in self-defense—he wished to stand on his Fifth Amendment right not to testify as to count 3. At a pretrial motions hearing, counsel for Defendant reiterated that he "may or may not want to testify about self-defense" underlying the USP assault. R., Vol. 1 at 380. Defense counsel also said that it was unlikely Defendant would testify about the FCI assault.

The district court denied the severance. It was unpersuaded that evidence of one assault might show a propensity to commit the other or that the government was attempting to bolster a weaker case with a stronger one. It also rejected Defendant's Fifth Amendment argument, ruling that he failed to show he had important testimony to give based on his claim of self-defense or provide a strong reason why he could not testify about the FCI assault.

3

During the trial, Defendant twice unsuccessfully renewed his motion to sever, first following admission of the evidence underlying the USP assault and a second time at the close of the government's case-in-chief. In support of his second motion he made an additional proffer, indicating that he would testify that the USP assault was an act of self-defense. He said that two days before the incident he had been threatened in the prison chow hall by members of a Native American gang called the "Warrior Society," which was led by the victim of the stabbing. Also, on a separate occasion, the victim and several associates, all of whom were known to carry knives, surrounded him and threatened to give him a "smash down." R. Vol. 4 at 262. Defendant asserted that the victim threatened him just before the assault, as corroborated on the video of the stabbing, which showed that just moments before the assault, the victim looked over his shoulder and appeared to say something to Defendant. Defendant also maintained that he would invoke his Fifth Amendment right not to testify about the FCI assault. The district court denied the motion again, ruling that the additional proffer was untimely.

At the jury-instruction conference, Defendant requested a self-defense instruction for the USP assault. He again argued that the portion of the video in which the victim looked over his shoulder just before the stabbing confirmed his belief that the victim posed a threat. He also cited the video of his statement to investigators in which he claimed to have acted in self-defense. The district court refused to give the instruction, ruling that there was insufficient evidence that he acted in response to a threat of an imminent use of force. It did, however, instruct the

4

jury that evidence on each count should be considered separately and that a verdict on any one count should not influence the verdict on any other count.

## II

We consider Defendant's issues in turn.

### A. *Self-Defense Instruction*

We review for abuse of discretion the district court's refusal to give a self-defense instruction. *See United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014). "[A] defendant is entitled to an instruction on any recognized defense for which there is evidence sufficient for a reasonable jury to find in his favor." *Id.* "For the purposes of determining the sufficiency of the evidence, we accept the testimony most favorable to the defendant." *Id.*

"A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *Id.*; *see United States v. Feather*, 768 F.3d 735, 739 (7th Cir. 2014) ("Self-defense is a viable legal justification only if the defendant was faced with an actual, *imminent* threat of physical harm. This is so even in prisons, where threats and violence are common."); *United States v. Bello*, 194 F.3d 18, 26-27 (1st Cir. 1999) (affirming denial of self-defense instruction where defendant assaulted another inmate because of an alleged threat some 18 hours earlier); 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4(d) (2017) ("[S]elf-defense require[s] that the defendant reasonably believe his adversary's unlawful violence to be almost immediately forthcoming." (footnote omitted)).

5

There is no evidence that Defendant was threatened with imminent death or great bodily harm. The video of the stabbing simply shows the victim walking down the ramp with Defendant behind him. Although the victim turns his head toward Defendant moments before the stabbing, perhaps to say something, there is no way to tell if the victim made a verbal threat of imminent harm, nor is there any visual cue that the victim posed an imminent danger. Defendant also relies upon the video of the statement he gave to investigators in which he said that he acted in self-defense, but that interview simply suggests that he perceived a possible threat of danger at some later time; it does not assert an imminent threat. *See United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) (affirming denial of self-defense instruction for preemptive strike, in part because "'later' and 'imminent' are opposites"). He told investigators, "I would've got hit," and "I had to defend myself." Supp. R., Gov't Ex. 15 at 3:37-43. He explained, "These guys already tried to jump me twice . . . . One on the walkway, and then, uh, and at the chow hall, like *just days before this happened*. I was gettin' pressed, man." *Id.* at 6:25-41 (emphasis added). Nothing in these statements suggests Defendant faced an imminent danger. Consequently, Defendant was not entitled to a self-defense instruction.[1]

*B. Severance*

Defendant contends that the district court erred in denying his motions to sever counts 1 and 2 from count 3. He asserts (1) that he was prejudiced by the "spillover

---

[1] Absent an imminent danger, we need not consider whether Defendant was also required to show the absence of lawful alternatives.

6

effect" from evidence of one assault corroborating or showing a propensity to commit the other, Aplt. Br. at 16, and (2) that his Fifth Amendment rights were violated because he wished to testify that he acted in self-defense at USP but hold the government to its burden of proof regarding the FCI assault. We reject both arguments.

Defendant concedes that the charges relating to the two assaults were properly joined because they share the same or similar character. *See* Fed. R. Crim. P. 8(a). Therefore, we focus on whether the charges should have been severed under Fed. R. Crim. P. 14(a). *See United States v. Hill*, 786 F.3d 1254, 1257 n.2 (10th Cir. 2015) (distinguishing between concepts of misjoinder and severance).

Under Rule 14(a), "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires." The denial of a severance "will not ordinarily be reversed in the absence of a strong showing of prejudice." *Hill*, 786 F.3d at 1272 (internal quotation marks omitted). "To establish prejudice, a defendant must point to a specific trial right that was compromised or show the jury was prevented from making a reliable judgment about guilt or innocence." *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007) (brackets, ellipsis, and internal quotation marks omitted). We review the denial of a motion to sever for an abuse of discretion, mindful that Defendant "bears a particularly heavy burden" to show an abuse of discretion. *Hill*, 786 F.3d at 1272.

Defendant's spillover argument fails because "[a]ny prejudice resulting from the mere cumulative effect of the evidence underlying the multiple charges does not mandate severance." *United States v. Thomas*, 849 F.3d 906, 912 (10th Cir.), *cert. denied*, 138 S. Ct. 315 (2017). Although the two assaults here occurred more than a year apart, we have affirmed the denial of a severance for charges of the same or similar character (robbery of a business) committed three years apart. *See, e.g., id.* at 908, 912. Moreover, the evidence underlying each assault was distinct: the USP assault involved Defendant stabbing another inmate from behind with a shank, while the FCI assault involved his throwing another inmate down a flight of stairs and stomping and kicking the victim. *Cf. id.* at 912 ("different forms [of evidence] make it more likely that the jury was able to distinguish between counts, thereby weighing against a finding of prejudice"). Nor does Defendant explain why the jury would not have been able to consider the charges and the underlying evidence independently. *See United States v. Jones*, 530 F.3d 1292, 1302 (10th Cir. 2008) (rejecting spillover argument where defendant "offered no explanation of his theory that jurors could not be expected to separate evidence of" different charges against him). Also, the district court directed the jurors to consider the evidence underlying each count independently. *See Thomas*, 849 F.3d at 912 ("[L]imiting instructions are ordinarily sufficient to cure potential prejudice." (internal quotation marks omitted)). "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (internal quotation marks omitted).

Defendant's Fifth Amendment argument also fails. When a defendant moves for severance because he seeks to testify about some counts but not others, "no need for severance exists until the defendant makes a convincing showing that []he has both important testimony to give concerning one count *and* a strong need to refrain from testifying on the other." *Jones*, 530 F.3d at 1300 (internal quotation marks omitted). "[T]he defendant must present enough information to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *Id.* (ellipsis and internal quotation marks omitted).

But Defendant failed to proffer any specific information until after the district court twice denied a severance. Previously he had asserted only that he had important testimony to give about the USP assault that would advance his theory of self-defense. Besides, even the proffer would not support a finding that he faced imminent danger of death or great bodily harm, as would be necessary for a valid claim of self-defense. And the proffer was too late to enable the district court to weigh considerations of judicial economy against Defendant's rights— to accommodate Defendant's request at that time would require declaring a mistrial on the FCI charge. *See United States v. Valentine*, 706 F.2d 282, 291 (10th Cir. 1983) (affirming denial of severance where defendant's proffer at the close of the government's case was "weak" and made "at that late stage of the case").

9

Nor has Defendant shown a strong need to refrain from testifying about the FCI assault. Although he wanted to hold the government to its burden on that charge, this alone fails to establish a strong need to refrain from testifying. *See Jones*, 530 F.3d at 1301. Indeed, "[i]f a defendant's desire not to testify on a particular count, without more, amounted to a compelling need not to testify, then required severance would be the rule, and not the exception." *Id.* Consequently, the district court did not abuse its discretion in denying a severance.

III

The district court's judgment is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge