FILED
United States Court of Appeals
Tenth Circuit

**November 14, 2013**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

OSCAR GALINDO,

  Defendant - Appellant.

No. 12-3186
(D. Kan.)
(D.C. No. 6:11-CR-10117-EFM-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **MATHESON**, Circuit Judges, and **BLACKBURN**, District Judge.[**]

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument

Appellee Oscar Galindo challenges the sufficiency of the evidence supporting his

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

[**] The Honorable Robert E. Blackburn, United States District Judge for the District of Colorado, sitting by designation.

convictions for possession of fraudulent documents, false statement, and aggravated identity theft. The district court denied Mr. Galindo's mid-trial and post-trial motions for judgment of acquittal under Fed. R. Crim. P. 29(a) and (c), respectively, and sentenced Mr. Galindo to a term of imprisonment of 38 months. I R. 33. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

On January 20, 2010, a Drug Enforcement Administration ("DEA") state and local task force served a search warrant at Mr. Galindo's residence in Arkansas City, Kansas, in connection with an investigation into distribution of cocaine, methamphetamine, and marijuana.[2] Although the officers also had an arrest warrant for Mr. Galindo at that time, it was believed that he had fled the area prior to the execution of the search warrant.

Nearly one year later, in December 2010, agents learned that Mr. Galindo's wife was working in Wichita, Kansas. Kansas Bureau of Investigation Special Agent Gregory Skelton, who had been assigned to the DEA Task Force since 2007, was assigned to follow up on this lead regarding Mr. Galindo's possible whereabouts. II R. 88-89.

On January 7, 2011, while near Mrs. Galindo's house, Officer Skelton saw Mrs. Galindo's car drive by. He recognized Mrs. Galindo as the driver and observed a passenger in the front seat whom, based on prior dealings, he believed to be Mr. Galindo. Officer Skelton pulled the car over. The passenger exited the car and started walking

---

[2] Mr. Galindo came to authorities' attention after his voice was identified on a wire tap.

back toward Officer Skelton's vehicle. Officer Skelton was fairly certain that the passenger was Mr. Galindo. When Mr. Galindo asked why the car had been stopped, Officer Skelton positively recognized him. Nevertheless, he asked Mr. Galindo for identification. II R. 89-92.

In response to this request, Mr. Galindo produced an Oklahoma identification card bearing his own photograph, but purportedly issued to a "Severiano Ruiz." Mr. Galindo also produced a Social Security card in the name of Severiano Ruiz. II R. 91, 107. When Officer Skelton suggested that Mr. Galindo's persistence in claiming that he was someone he was not could implicate his wife in criminal activity for harboring a fugitive, Mr. Galindo admitted his true identity. Officer Skelton then arrested Mr. Galindo.[3] II R. 92-94.

## DISCUSSION

Mr. Galindo was charged in Count 1 of the indictment with violating 18 U.S.C. § 1546(a), which provides, in relevant part:

---

[3] Further investigation revealed that the Social Security card was genuine inasmuch as the account number on the card was, in fact, issued by the Social Security Administration to a Severiano Ruiz. Appellant had obtained the Oklahoma identification card by traveling to Stillwater, Oklahoma, in April 2010, and presenting the Ruiz Social Security card and a California birth certificate bearing the name Severiano Ruiz. II T. 161-166; III R. 207-208; Gov't Exhs. 3 & 4. At trial, a Special Agent with the Social Security Administration testified that nine Social Security cards had been issued to Severiano Ruiz between 1972 and 1998. II R. 141. Other testimony revealed that at least four people in south central Kansas alone had used Severiano Ruiz's Social Security number to obtain employment. III R. 204. Indeed, appellant himself told the agents who transported him to the jail following his arrest that "there were about 300 other people that were also using that Social Security number." II R. 177-178.

> Whoever knowingly forges, counterfeits, alters, or falsely makes any . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . [s]hall be fined under this title or imprisoned [for a term of years varying with the nature of the offense].

Count 3 of the indictment charged Mr. Galindo with a violation of 18 U.S.C. § 1001(a)(2), which makes it a felony, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [to] knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation."

Counts 2 and 4 charged Mr. Galindo with aggravated identity theft in relation to Counts 1 and 3, respectively. See 18 U.S.C. § 1028A(1) (adding additional term of imprisonment of two years to felony sentence when defendant, "during and in relation to any felony violation enumerated in subsection (c),[4] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person . . .").

A. *Standard of Review*

Mr. Galindo postures this appeal as a challenge to the sufficiency of the evidence

---

[4] The enumerated offenses include, most relevantly, "any provision contained in this chapter (relating to fraud and false statements) . . ." 18 U.S.C. § 1028A(c).

to sustain his convictions on all four counts. A challenge to the sufficiency of the evidence is reviewed on appeal de novo. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). The verdict is reviewed to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied*, 126 S.Ct. 468 (2005). The court may consider all evidence admitted at trial, both direct and circumstantial, and all reasonable inferences that may be drawn from that evidence. *United States v. Nguyen*, 413 F.3d 1170, 1175 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 1108 (2006). "[W]hile the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1439 (1995) (internal citation and quotation marks omitted).

B. *Counts 1 and 2*

To reiterate, Count 1 of the indictment charged Mr. Galindo with violating 18 U.S.C. § 1546(a) by knowingly and intentionally possessing or using documents prescribed by statute and regulation as evidence of authorized stay or employment in the

United States knowing the documents were procured by fraud or unlawfully obtained.[5]

The district court instructed the jury that, to find Mr. Galindo guilty as to Count 1, three

essential elements had to be proved beyond a reasonable doubt:

> First, that on or about January 7, 2011, the defendant
> knowingly possessed and used a Social Security card or State
> of Oklahoma identification card that was procured by fraud or
> unlawfully obtained;

> Second, the defendant knew the Social Security card or the
> State of Oklahoma identification card was procured by fraud
> or unlawfully obtained; and

> Third, the Social Security card or State of Oklahoma
> identification card possessed or used by defendant are
> prescribed by statute or regulation as evidence of authorized
> stay or employment in the United States.

I R. 10. The court further instructed the jury, over appellant's objection, that "Federal law

provides that a Social Security card or state-issued identification card is evidence that a

person is authorized to be present in the United States or to be employed in the United

States." I R. 10-11.

In challenging his conviction on Count 1 (and the related Count 2), Mr. Galindo

presents two related, but diametrically opposed, arguments: (1) that the government failed

to prove that the Social Security card or Oklahoma identification card constituted

evidence of authorized stay or employment in the United States; and (2) that the issue

whether the Social Security card and/or Oklahoma identification card were evidence of

---

[5] It is uncontroverted that Mr. Galindo is a legal, permanent resident of the United States.

authorized stay or employment in the United States is a legal question for the court and, thus, should not have been presented to the jury. We agree with the latter proposition, and therefore reject the suggestion that the question was one of fact for the jury.[6]

Moreover, to the extent Mr. Galindo appears to believe that a Social Security card alone is insufficient proof of authorization to be present or employed in this country, he is simply mistaken. In response to Mr. Galindo's Rule 29(c) motion, the district court concluded that its instructions were partially flawed, insofar as they suggested that a state-issued identification card could establish proof of authorization to be present or employed in the United States. I R. 20. In this, the district court was correct – such identification is acceptable only to establish proof of identity. *See* 8 C.F.R. § 274a.2(b)(1)(v)(B)(1)(i). Nevertheless, the applicable regulations plainly provide that a Social Security card is adequate and appropriate evidence of these essential facts. *See* 8 U.S.C. § 1324a(b)(1)(C)(i).[7]

---

[6] Nor did the district court err in providing a jury instruction on this legal issue, as the court essentially advised the jury that this fact had been proven as a matter of law.

[7] Although Mr. Galindo does not appeal on this basis, the evidence likewise was more than sufficient to establish the other elements of Count 1, as well as all four elements of Count 2. *See United States v. Abelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) ("To establish a violation of § 1028A(a)(1), the Government must prove the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense."), *cert. denied*, 131 S.Ct. 182 (2010) (footnote omitted); *see also United States v. Jiminez*, 2012 WL 1752706 at *4 (N.D. Okla. May 16, 2012). The evidence at trial clearly showed that Mr. Galindo knew that the Social Security number shown on the card he presented to Officer Skelton was assigned to someone other than himself. *See Flores-Figueroa v. United States*, 556 U.S. 646, 657, 129 S.Ct. 1886, 1894, 173 L.Ed.2d 853 (2009).

For these reasons, Mr. Galindo's convictions as to Counts 1 and 2 will be upheld.

C. *Counts 3 and 4*

Count 3 of the indictment charged Mr. Galindo with knowingly and willfully making a false and fraudulent statement to a DEA agent in a matter within the jurisdiction of the agency. Count 4 charged Mr. Galindo with aggravated identity theft in connection with Count 3. To establish the elements of the offense charged in Count 3, the government was required to prove five essential elements, including, relevantly for this appeal: (1) that the statement or representation was made in a matter within the jurisdiction of the executive branch of the United States; and (2) that the statement or representation was material to the DEA's investigation. *See* Tenth Circuit Pattern Criminal Jury Instruction 2.46.1 (2011); *United States v. Harrod*, 981 F.2d 1171, 1175 (10th Cir. 1992), *cert. denied*, 113 S.Ct. 2350 (1993).

Mr. Galindo contends first that the government failed to present sufficient evidence to establish that Officer Skelton was acting as a federal officer at the time he detained and arrested Mr. Galindo and, thus, that the matter was not within the jurisdiction of the DEA. This argument is belied by the record. The evidence at trial established that Officer Skelton has worked with the DEA Task Force since 2007, has been formally deputized by the DEA, and carries DEA credentials. II R. 83-88. His office is located at DEA headquarters, and his day-to-day activities are supervised by DEA officials. II R. 121-122. The evidence further showed that investigations that are managed and controlled by the DEA nevertheless are frequently charged in state court.

The arrest warrant for Mr. Galindo arose from a just such a DEA investigation charged in Kansas state court. II R. 85-88.

Thus, regardless whether Officer Skelton introduced himself to Mr. Galindo on January 7, 2011, as an officer of the Kansas State Bureau of Investigation acting under the authority of a Kansas state court arrest warrant, the evidence was sufficient to establish that Officer Skelton was a federal officer acting within the scope of the jurisdiction of the DEA at the time he stopped Mr. Galindo.

Mr. Galindo argues further that the statements and representations he made were not material because Officer Skelton already knew that Mr. Galindo was not Severiano Ruiz at the time of the stop. Mr. Galindo thus concludes that the false identification he presented to the officer could not have influenced the DEA's investigation. The law is well-established that a statement or representation is material if is has a natural tendency to influence or is capable of influencing a decision of a federal agency. *See* Tenth Circuit Pattern Criminal Jury Instruction 2.46.1; *Harrod*, 981 F.2d at 1176. Importantly, given this definition, a statement may be material even though it did not actually influence the agency. *See* Tenth Circuit Pattern Criminal Jury Instruction 2.46.1 (2011); *United States v. Siemaszko*, 612 F.3d 450, 470 (6th Cir. 2010).

Mr. Galindo's representation, by presentation of the false and fraudulent documents, that he was Severiano Ruiz clearly could have influenced an officer's decision to execute the arrest warrant in the name of Oscar Galindo. Thus, even though it may not have influenced Officer's Skelton's calculus in this particular instance, the

representation was material.  For these reasons, the convictions as to Counts 3 and 4 will

be upheld as well.

**AFFIRMED**.

Entered for the Court


Robert E. Blackburn
District Judge