**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FRANCIS JAMES ACEBO, JR.,

    Defendant - Appellant.

No. 24-8035
(D.C. No. 2:23-CR-00081-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

District courts have broad discretion to manage discovery, evidentiary matters before them, and issues that arise at trial. Because district courts are best positioned to deal with these matters, we disturb their rulings only when we are confident they have abused their discretion. Here, the district court properly balanced the Federal Rule of Evidence 404(b) factors, properly excluded evidence, and properly applied Federal Rule of Evidence 606(b). So exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Defendant Francis Acebo lived next door to Derek Redstar Pappan, the victim in this case, and Pappan's girlfriend, Mia Brown.  Pappan, Brown, and a third person drove to Pappan's residence on the Wind River Indian Reservation in Wyoming. Defendant approached Pappan's window and asked Pappan to go on a beer run for him.  Defendant testified that, at the time, Pappan acted paranoid and had a firearm pointed at Defendant.

After Pappan and Brown arrived with the beer, Defendant returned to Pappan's house.  Two other men who lived with Pappan were home when Defendant arrived. The group drank beer with Defendant for a few hours.  During that time, Pappan and Brown quarreled loudly in their bedroom, which had fabric hung in place of a door. Defendant testified that at one point he thought he saw a gun barrel pointing from behind the curtain and sweeping the room.  Believing he was "being set up," Defendant drew his own firearm.  But he accidentally dropped it into the couch, which diffused the situation.  Defendant then went outside to relieve himself because the pipes in the house had frozen.

The witnesses' accounts differ as to what happened when Defendant returned, but everyone, including Defendant, agrees that he shot Pappan in the back of the head.  Defendant claimed self-defense based on his past experiences with Pappan and because—although he could not actually see Pappan holding a gun—he thought Pappan might "ambush" him.

2

The government charged Defendant with three counts: murder in Indian country, using a firearm during a crime of violence, and causing death through the use of a firearm.

At trial, the district court ruled against Defendant on multiple issues. First, the district court barred Defendant from admitting evidence of the victim's prior bad acts—what courts often call "reverse 404(b)" evidence. The district court allowed Defendant to testify that he generally feared Pappan but not about specific instances of Pappan's prior conduct. Second, at the government's objection, the district court barred Defense counsel from cross-examining Brown about certain prior instances in which she heard Pappan threaten Defendant. The issue arose when Defense counsel asked Brown if she knew of any prior instances when Pappan had threatened Defendant, and she said no. Defense counsel planned to impeach Brown using her prior statement to law enforcement in which she recounted a time when Pappan told her he wanted to "take out" Defendant and Defendant's kids. Third, the coroner's report included a toxicology screen showing Pappan was under the influence of methamphetamine when he died, so defense counsel wanted to question the coroner on how methamphetamine effected Pappan before his death. But the district court barred Defense counsel from asking the coroner about methamphetamine's effects on Pappan because the coroner did not perform the toxicology screen, making this testimony inadmissible hearsay. Fourth and finally, the district court determined that Federal Rule of Evidence 606(b) barred it from receiving any juror testimony about an issue that arose after the jury returned a guilty verdict. After four hours of jury

3

deliberations, one juror—Juror #32—suffered a panic attack, collapsed, and required medical attention from emergency personnel. After speaking with the jury, the court determined jury deliberations could continue, and Juror #32 remained on the panel.

Four hours later the jury finished deliberating and returned a guilty verdict on all counts. Within twenty-four hours, Juror #32 sent an email expressing concern that extremely hostile conditions and atmosphere in the jury-deliberation room had caused his panic attack.[1] Juror #32 expressed regret and "very reasonable doubt" on a "large amount of the case," but also that he had remained on the jury after the panic attack because he felt strongly that Defendant was innocent. Even so, Juror #32 stated that ultimately the other jurors overbore his will, and he gave in.

The district court disclosed the email to the parties in a sealed proceeding and determined that Federal Rule of Evidence 606(b) barred it from receiving any juror testimony about jury deliberations except testimony about improper outside influences. The district court then imposed concurrent life sentences on Counts 1 and 3, and a consecutive ten-year sentence on Count 2.

On appeal, Defendant advances four arguments. First, the district court abused its discretion when it barred under Federal Rule of Evidence 404(b) Defendant's evidence of the victim's past bad acts. Second, the district court violated the Sixth

---

[1] The parties characterize the timelines differently. The juror actually sent his email the afternoon the day after the trial, which was the first day of a three-day weekend. Additionally, he emailed the state District Court of Laramie County, Wyoming, which then forwarded the email to the United States District Court for the District of Wyoming. By the time the email reached its intended audience, five days had passed since the trial's end.

Amendment's Confrontation Clause when it barred under Federal Rule of Evidence 403 a line of cross-examination about Brown's previous statements. Third, the district court abused its discretion when it barred under Federal Rule of Evidence 802 cross-examination about the victim's toxicology report showing the victim was on methamphetamine at the time he died. Fourth, the district court denied Defendant a fair trial when it declined under Federal Rule of Evidence 606(b) to hold an evidentiary hearing to investigate juror misconduct.

## II.

Defendant first contends the district court abused its discretion when it barred him from introducing evidence of Pappan's past bad acts to show Defendant's mental state when he shot Pappan. At trial, Defendant sought to introduce:

(i)     evidence that Pappan committed a drive-by shooting at Defendant's grandmother's home five weeks before the night in question;
(ii)    evidence that Pappan had told Defendant "You need to come clean with this [allegation of misconduct] with your family or I'm going to beat your ass or something to that effect"; and
(iii)   other prior instances of threats of death and/or serious bodily injury Pappan made toward Defendant.

Defendant insisted these events were "inextricably intertwine[d]" with the murder such that they did not represent prior bad acts, but that instead he wanted to use them to show the victim's "trait." After discussing 404(b) with the parties, the district court concluded Rule 404(b) precluded the evidence.

Although the district court did not specify on what ground it based its admissibility decision, "we may affirm on any basis supported by the record," even if "ruling on arguments not reached by the district court or even presented to us on

5

appeal." Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011) (Gorsuch, J.) (citing United States v. Davis, 339 F.3d 1223, 1227 (10th Cir. 2003)).

Here, Defendant did not clear an important hurdle. Well before trial, the district court entered a Discovery and Scheduling Order. The Order read:

> NOTICE OF INTENT TO USE EVIDENCE AT TRIAL PURSUANT TO FED. R. EVID. 404(b) AND 807: [a]ny party intending to introduce evidence at trial under Federal Rules of Evidence 404(b) or 807 shall file a notice of such intent no later than fourteen (14) days prior to trial. Any response to such notices shall be filed no later than seven (7) days after the notice is filed.

This Order created a notice requirement beyond what Rule 404(b)(3) imposes. While Rule 404(b)(3) requires the government to give notice of intent to introduce prior-bad-acts evidence, the district court's order imposed a notice requirement for both parties seeking to introduce Rule 404(b) evidence.

Defendant ignored the order, insofar as it required notice of 404(b) evidence. He never filed notice of such intent to introduce prior bad-acts evidence as required by the Order, although he maintains on appeal that his failure did not prejudice the government, which apparently knew enough to "describe the evidence in painstaking detail."[2]

---

[2] Defendant claims the evidence he sought to introduce was not character evidence within the ambit of 404(b). But the text of 404(b) does not only cover character evidence—it covers evidence of other crimes, wrongs, or acts both those used for permissible and impermissible reasons. Fed. R. Evid. 404(b). Defendant's evidence thus falls under 404(b), and the district court's Order mandated he file the requisite notice.

6

Because Defendant failed to file notice of his intent to introduce prior-bad-acts evidence, he did not comply with the district court's discovery order. His failure to comply undermines his abuse-of-discretion argument. Accordingly, we affirm the district court's ruling on this basis and do not reach Defendant's arguments about the purpose for which he wanted to use the evidence under Rule 404(b).

III.

Defendant next argues the district court violated the Sixth Amendment's Confrontation Clause when it barred him from cross-examining Brown about a past conversation in which Pappan had told her that "he was going to take out [Defendant] or take out [Defendant's] children." At trial, defense counsel asked Brown if she was "aware of anything in [Pappan and Defendant's] relationship that might have caused either one or the other to be fearful of the other." Brown replied in the negative. Defendant contends he should have been able to impeach Brown with her inconsistent statements about Pappan. Defendant intertwines this argument with a claim that the district court misapplied Rule 403's balancing test.

We review for abuse of discretion district courts' decisions to exclude evidence. United States v. Tony, 948 F.3d 1259, 1261 (10th Cir. 2020) (citing United States v. Ramone, 218 F.3d 1229, 1234 (10th Cir. 2000)). We disturb evidentiary rulings only when the appellant distinctly shows the district court based its ruling on a clearly erroneous finding of fact, an erroneous conclusion of law, or that the ruling manifests a clear error in judgment. United States v. Williams, 934 F.3d 1122, 1131 (10th Cir. 2019) (citing United States v. Hall, 473 F.3d 1295, 1303

7

(10th Cir. 2007)). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." United States v. Silva, 889 F.3d 704, 709 (10th Cir. 2018) (quoting Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 968 (10th Cir. 2001)).

The district court barred Defendant's line of questioning for two reasons: (1) Brown's statement was not a prior inconsistent statement, and (2) Brown's statements failed Rule 403's balancing test by "open[ing] doors that are certainly prejudicial," and possibly causing an "enormous waste of time trying to track them down, to no real avail or benefit to anyone at this point." We agree with the district court's assessment.

Brown's prior statement about Pappan's threats was not inconsistent with her answers at trial, which alone defeats Defendant's justification for wanting to use the statement. Although Brown's prior statement discussed information that could seem threatening, Defendant neither introduced nor proffered any evidence establishing that Defendant knew about Pappan's threats. Thus, on the record before the district court, there was no inconsistent statement with which Defendant could impeach Brown.

Because Defendant never heard Pappan's threats and the record does not reflect whether Defendant even knew of them, their probative value was substantially outweighed by "the danger of unfair prejudice, confusion of the issues, [] misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001)

8

(quoting Fed. R. Evid. 403). While Brown may have lost credibility in the eyes of the jury members if they heard this line of questioning, the statement also risked improperly influencing the jury because it ultimately did not bear on Defendant's state of mind at the time of the shooting, and arguably encouraged the jury to find guilt based upon Defendant's past acts. The district court, therefore, did not clearly err or render an arbitrary, capricious, whimsical, or manifestly unreasonable judgment when it barred this line of questioning.

Defendant also raises, for the first time on appeal, a Confrontation Clause argument with respect to counsel's cross-examination of Brown. The Sixth Amendment guarantees a defendant "the right to testify, present witnesses in his own defense, and to cross-examine witnesses against him." United States v. Markey, 393 F.3d 1132, 1135 (10th Cir. 2004) (citing Rock v. Arkansas, 483 U.S. 44, 52 (1977)). But this right is not without limits. Trial courts retain "wide latitude" to impose reasonable restrictions on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Defendant contends that Brown's trial testimony contradicts her earlier statement that there was no conflict between Pappan and Defendant. But Defendant has not adequately developed an argument that the district court abused its discretion in concluding that allowing cross-examination about her pretrial statements would be confusing to the jury and would be "prejudicial to the questions that are before the Court." Because Defendant has not challenged the reasons for the ruling, we reject his

9

challenge under the Confrontation Clause.  See Nixon v. City and County of Denver, 784 F.3d 1364, 1366, 1369–70 (10th Cir. 2015) (concluding that an appellant cannot establish reversible error if the appellant's briefs do not challenge the district court's reasoning).

## IV.

Defendant next argues the district court abused its discretion when it barred him from questioning the testifying coroner about methamphetamine in Pappan's system.  The coroner's toxicology report confirmed the existence of methamphetamine in Pappan's system when he died, but the coroner testified that "a gunshot wound [to] the head" caused his death.  Anticipating defense counsel's methamphetamine-related questions on cross-examination, the government objected on both hearsay and relevance grounds.  Defendant did not contemporaneously argue for any hearsay exceptions.  The district court sustained the objection.

Here, Defendant does not allege a Sixth Amendment violation, but relies— with a single sentence—on the hearsay exceptions for statements made for medical diagnoses under Federal Rule of Evidence 803(4), and for public records under Federal Rule of Evidence 803(8).

But Defendant provides no reasoned explanation as to how his evidence falls under a hearsay exception, nor even identifies which exception under which he intended to introduce it.  This one-sentence assertion did not serve to adequately brief this argument for appellate review.  "An appellant may waive an issue by inadequately briefing it."  Tachias v. Sanders, 130 F.4th 836, 843 (10th Cir. 2025)

10

(quoting Burke v. Regalado, 935 F.3d 960, 1014 (10th Cir. 2019)).  "'Cursory statements, without supporting analysis and case law,' are insufficient to preserve an issue."  Id. at 843–44 (quoting Bronson v. Swensen, 500 F.3d 1099, 1105 (10th Cir. 2007)).  Therefore Defendant waived his hearsay argument, and we decline to consider it.

V.

Lastly, Defendant argues the district court erred by not holding an evidentiary hearing on an allegation of improper jury influence.  He contends the district court violated his Sixth Amendment right to trial by an impartial jury by refusing to sufficiently investigate Juror #32's letter.  We need not recount the email's full text, but Juror #32's substantive concerns, which he communicated to the district court after the Court excused the venire, include: harboring "very reasonable doubt" about the verdict; having "mass confusion involving this case"; being "afraid the members of the jury could threaten [him]"; feeling bullied in the case; feeling "the deliberation room was very hot"; and feeling so strongly about the case's outcome that he "fought to stay on the jury" even after his panic attack.

To protect the finality of jury verdicts, Federal Rule of Evidence 606(b) prohibits district courts from inquiring into internal jury deliberations, absent specific circumstances.  Those circumstances include: (1) when "extraneous prejudicial information was improperly brought to the jury's attention," (2) when "an outside influence was improperly brought to bear on any juror," and (3) when "a mistake was made in entering the verdict on the verdict form."  Fed. R. Evid. 606(b).  Defendant

11

alleges that the "external influence" of medical personnel treating Juror #32 warranted an evidentiary hearing under Remmer v. United States, 347 U.S. 227 (1954). He relies on Remmer for the proposition that "[t]he trial court should not decide and take final action ex parte" on information of jury misconduct, but "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." Id. at 229–30.

In this Circuit, "[h]ow and whether to have a hearing on a claim that jurors were improperly exposed to extraneous information is within the trial court's sound discretion." United States v. Humphrey, 208 F.3d 1190, 1198 (10th Cir. 2000) (citing United States v. Davis, 60 F.3d 1479, 1483 (10th Cir. 1995)), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332 (2009). The district court held a sealed proceeding with counsel for both parties and Defendant present to disclose Juror #32's letter and ultimately determined that Federal Rule of Evidence 606(b) barred further inquiry into the jury deliberations. We conclude the district court's proceeding appropriately dealt with the Juror #32's letter.

Defendant makes several arguments about the proceeding, but none have merit. First, Rule 606(b)'s exception applies only to *external* influences, not internal influences. Juror #32's letter, while disclosing tense jury deliberations and maybe even threatening behavior from other jurors, never alleged that any external influences improperly impacted the jury deliberations or his decision to join the verdict returned against Defendant. Defendant claims the medical team that gave

12

assistance to Juror #32 was an improper external influence because it "disrupt[ed] jury deliberations." But this allegation lacks detail and contains no causal link between medical intervention and a change in jury verdict. Notably, Juror #32's letter contained no hint that the medical intervention caused a change in his verdict—in fact, he suggests he stayed *despite* the medical intervention. When a Defendant "does not allege any 'external' interference with the jury's deliberative process, Rule 606(b) applies, and the trial court [acts] well within its discretion in declining to make inquiry of the juror." United States v. Miller, 806 F.2d 223, 225 (10th Cir. 1986) (citing United States v. Cattle King Packing Co., Inc., 793 F.2d 232, 243 (10th Cir. 1986)).

Additionally, Defendant mistakenly relies on Remmer in critiquing the manner in which the district court addressed Juror #32's letter. Remmer involved communication between a juror and a party outside the litigation who offered a financial incentive in exchange for a favorable verdict. 347 U.S. at 228. Here, no outside party contacted Juror #32. Remmer also condemned final, ex parte action where interested parties were not "permitted to participate." Id. at 229–30. But here, the district court held a sealed proceeding with counsel from both parties to discuss the letter, and eventually determined the rules of evidence barred further inquiry. While "[j]urors may, at times, feel sorry for a defendant even though they voted to convict the defendant of the crime charged . . . [that] does not in any wise vitiate" the conviction. Cattle King Packing Co., 793 F.2d at 243. We are particularly suspicious of "[a]llegations of juror misconduct, incompetency, or inattentiveness,

13

raised for the first time days, weeks, or months after the verdict" because it "seriously disrupt[s] the finality of the process," and "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct."  Tanner v. United States, 483 U.S. 107, 120–21 (1987) (citing Government of V.I. v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985)).  At the time of Juror #32's panic attack, the district court questioned the jury and, based on Juror #32's own attestations, allowed jury deliberations to continue.  Given the district court's wide latitude to determine the need for a Rule 606(b) hearing and considering Rule 606(b)'s protection of final jury decisions, we find no error with the district court's handling of Juror #32's letter.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge